UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| A.V., a minor, by and through his parents, William Valichka and Tracy Valichka, | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 13-1598 |
| v. | : | |
| PENNSGROVE/CARNEYS POINT REGIONAL SCHOOL DISTRICT and GLEN ASCH, individually and in his capacity as an administrator of the Pennsgrove/ Carneys Point Regional School District, | : | MEMORANDUM OPINION |
| Defendants. | : | |

This matter is before the Court on Defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). The Court has considered the submissions of the parties and has decided the motion pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, the motion will be denied.

Background

This matter was removed to this Court by Defendants Pennsgrove/Carneys Point Regional School District and Glen Asch, individually and in his capacity as an administrator of the Pennsgrove/Carneys Point Regional School District. The original case was filed in the Superior Court of New Jersey, Law Division, Salem County by Plaintiff A.V., a minor, by and through his parents, William Valichka and Tracy Valichka.

A.V. is a student at Pennsgrove High School, where he is on the baseball team. (Compl., ¶ 5.) On or about March 29, 2012, during baseball practice at the school's baseball field, A.V.'s father gave A.V. Advil for back pain. (Compl., ¶ 6.) Plaintiff has alleged that another student reported to a teacher that A.V. was taking steroids, and the

teacher reported that information to Defendant Glen Asch.  (Compl., ¶¶ 7-8.)  Asch called A.V. to his office and questioned him; A.V. admitted to taking Advil, but denied the use of steroids.  (Compl., ¶ 9.)

A.V.'s parents were summoned to the school, and Asch informed them that A.V. would not be permitted to return to school until he took a drug test.[1]  (Compl., ¶ 10.)  Plaintiff's parents had him seen by a physician who performed an evaluation and urine screen, and confirmed that A.V. had not taken steroids.  (Compl., ¶11.)  A.V. was then permitted to return to school.  (Compl., ¶ 13.)

A few days later, Plaintiff's father called or met with Asch and raised the issues that A.V. should not have been required to take "an actual drug test" and he should not even have been sent for an evaluation because no teacher or administrator had any reasonable cause to believe A.V. had taken a drug.  (Compl., ¶ 15.)  Plaintiff alleges that Asch responded by informing the parents that "if they did not pursue these issues any further, . . . the school would not discipline A.V. for taking the Advil."  (Compl., ¶ 15.)  Instead, the parents retained an attorney who communicated with the school regarding these issues.  (Compl., ¶¶ 15-16.)  "Within a couple of days of that communication, A.V. was suspended for one day for taking an Advil, allegedly in violation of school policy."  (Compl., ¶ 17.)

Among other damages, Plaintiff contends he was excluded from the National Honor Society based on his suspension.  (Compl., ¶ 19.)  The Complaint asserts claims for (1) illegal search and seizure (and violation of the rights to procedural and

---

[1] Plaintiff contends that this violated N.J.A.C. 6:29-6.1 because A.V. should have been required to undergo only an "evaluation."  (Compl., ¶ 12.)

2

substantive due process) in violation of 42 U.S.C. § 1983 and the New Jersey Civil Rights Act; (2) retaliation in violation of 42 U.S.C. § 1983 and the New Jersey Civil Rights Act for having an attorney attempt to assert Plaintiff's civil rights; (3) violation of N.J. Stat. Ann. § 18A:40A-12, N.J.A.C. 6A:16-4, N.J.A.C. 6:29-6.1, "and Defendant's own internal policies and procedures"; (4) negligence; (5) Defendant Pennsgrove/Carneys Point Regional School District's negligent training and supervision of Asch.

Standard on Motion for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that a party may move for judgment on the pleadings. The movant under Rule 12(c) must show clearly that no material issue of fact exists and that it is entitled to judgment as a matter of law. <u>Rosenau v. Uniford Corp.</u>, 539 F.3d 218, 221 (3d Cir. 2008) (citing <u>Jablonski v. Pan Am. World Airways, Inc.</u>, 863 F.2d 289, 29091 (3d Cir. 1988)). A motion under Rule 12(c) is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6). <u>Turbe v. Government of the Virgin Islands</u>, 938 F.2d 427, 428 (3d Cir. 1991). Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." In order to survive a motion to dismiss, a complaint must allege facts that raise a right to relief above the speculative level. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007); <u>see</u> <u>also</u> Fed. R. Civ. P. 8(a)(2). While a court must accept as true all allegations in the plaintiff's complaint, and view them in the light most favorable to the plaintiff, <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 231 (3d Cir. 2008), a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions. <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). The complaint

must state sufficient facts to show that the legal allegations are not simply possible, but plausible. Phillips, 515 F.3d at 234. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

### 42 U.S.C. § 1983

Plaintiff's Constitutional claims are governed by Title 42 U.S.C. § 1983, which provides a civil remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution. See Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992). Any analysis of 42 U.S.C. § 1983 should begin with the language of the statute:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

See 42 U.S.C. § 1983. As the above language makes clear, Section 1983 is a remedial statute designed to redress deprivations of rights secured by the Constitution and its subordinate federal laws. See Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979). By its own words, therefore, Section 1983 "does not . . . create substantive rights." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing McCollan).

To state a cognizable claim under Section 1983, a plaintiff must allege a "deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." Phillips v. County of Allegheny, 515

4

F.3d 224, 235 (3d Cir. 2008) (citing Kneipp v. Teder, 95 F.3d 1199, 1204 (3d Cir. 1996)). Thus, a plaintiff must demonstrate two essential elements to maintain a claim under § 1983: (1) that the plaintiff was deprived of a "right or privileges secured by the Constitution or the laws of the United States" and (2) that plaintiff was deprived of her rights by a person acting under the color of state law. Williams v. Borough of West Chester, Pa, 891 F.2d 458, 464 (3d Cir. 1989). A similar analysis may be made regarding any claim under the New Jersey Civil Rights Act. See Armstrong v. Sherman, No. 09-716 (AET), 2010 WL 2483911, *5 (D.N.J. Jun. 4, 2010) ("[T]he language of the New Jersey Civil Rights Act, like the language of 42 U.S.C. § 1983, appears to grant a cause of action only to those persons whose rights have been personally violated.").

Analysis

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. CONST. amend IV. "[F]or searches by school officials 'a careful balancing of governmental and private interests suggests that the public interest is best served by a Fourth Amendment standard of reasonableness.'" Safford Inified Sch. Dist. No. 1 v. Redding, 557 U.S. 364, 370 (2009) (quoting New Jersey v. T.L.O., 469 U.S. 325, 341 (1985)).

> A school official's search of a student's person or his or her property is reasonable if (1) "the . . . action was justified at its inception," and (2) "the search as actually conducted was reasonably related in scope to the circumstances which justified the interference in the first place." Id. (internal citations and quotations omitted). The Court further held that a search "will be 'justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." Id. at 341–42. A search "will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." Id. at 342.

Hedges v. Musco, 33 F. Supp. 2d 369, 377 (D.N.J. 1999) (quoting T.L.O., 469 U.S. 325).

     Defendants argue that because public school districts are permitted to adopt random drug testing policies for students participating in extracurricular activities, without probable cause or individualized suspicion, pursuant to both federal law and N.J. Stat. Ann. § 18A:40A-22, the Plaintiff in this case was not subjected to an illegal search and seizure. Defendants therefore argue that Plaintiff has failed to state a claim in Count One, as there is no underlying constitutional violation. Defendants also argue that it follows that the school district cannot be liable on a theory of negligent training and supervision as set forth in Count Five.[2] Plaintiff maintains that the search and scope of the search were unreasonable, in that Plaintiff should have been subject only to an "evaluation," not a "drug test," in accordance with N.J.A.C. 6:29-6.1 et seq.

     The Court understands Defendants' argument, but a finding of reasonableness does not follow from Defendants' logic. At this stage of the litigation, the allegations of the Complaint are sufficient to survive a motion for judgment on the pleadings; it is plausible that the search at issue was unreasonable in its inception or scope or both. Therefore, Defendants' motion to dismiss Counts One and Five will be denied.

     Next, a claim of First Amendment retaliation requires demonstration of (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of

---

     [2]While the failure to train municipal employees may give rise to a Section 1983 action against a municipality, see City of Canton, Ohio v. Harris, 489 U.S. 378 (1989), "the inadequacy of . . . training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officials] come into contact." Id. at 388. The issue in a failure to train case is whether a training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent "policy."

ordinary firmness from exercising his/her constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action. Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006). If proven, the burden then shifts to defendant to show that it "would have taken the same action even in the absence of the protected activity." Swineford v. Snyder County, 15 F.3d 1258, 1270 (3d Cir. 1994).

Regarding Plaintiff's claim of retaliation in violation of 42 U.S.C. § 1983 and the New Jersey Civil Rights Act for having an attorney attempt to assert Plaintiff's civil rights, Defendants argue that because the issue of Plaintiff's drug test is purely a private matter and not of public concern, Plaintiff's "speech" was not constitutionally protected and he therefore has failed to state a First Amendment retaliation claim. Plaintiff argues that the requirement that speech be of public concern is not an issue in this type of case, as there is no governmental employment relationship between Plaintiff and the school district. Alternatively, Plaintiff argues that speaking out about how the school allegedly violated Plaintiff's Fourth Amendment rights is a matter of public concern.

Again, the allegations of Plaintiff's Complaint state sufficient facts to show that the retaliation was not simply possible, but plausible. As such, the motion for judgment on the pleadings as to Count Two will be denied.

Finally, Defendants argue that Plaintiff has not pled a violation of N.J. Stat. Ann. § 18A:40A-12[3] because he admitted he consumed "some type of drug or medication

---

[3]The statute provides:
a. *Whenever it shall appear to any teaching staff member . . . that a pupil may be under the influence of substances* as defined pursuant to section 2 of this act, *other than anabolic steroids*, that teaching staff member . . . shall report the matter as soon as possible to the school nurse or medical inspector, as the case may be, or to a student assistance coordinator, and

while on school grounds," and was therefore "required to submit to an examination and provide proof of same to the school." (Def. Br., p. 12.) In addition, Defendants argue that they have immunity from all State law claims set forth in Counts Three, Four, and Five of the Complaint pursuant to N.J. Stat. Ann. § 18:40A-13.

The statute provides:

> to the principal or, in his absence, to his designee. The principal or his designee, shall immediately notify the parent or guardian and the superintendent of schools, if there be one, or the administrative principal and shall arrange for an immediate examination of the pupil by a doctor selected by the parent or guardian, or if that doctor is not immediately available, by the medical inspector, if he is available. If a doctor or medical inspector is not immediately available, the pupil shall be taken to the emergency room of the nearest hospital for examination accompanied by a member of the school staff designated by the principal and a parent or guardian of the pupil if available. The pupil shall be examined as soon as possible for the purpose of diagnosing whether or not the pupil is under such influence. A written report of that examination shall be furnished within 24 hours by the examining physician to the parent or guardian of the pupil and to the superintendent of schools or administrative principal. If it is determined that the pupil was under the influence of a substance, the pupil shall be returned to the pupil's home as soon as possible and shall not resume attendance at school until the pupil submits to the principal a written report certifying that the pupil is physically and mentally able to return thereto, which report shall be prepared by a personal physician, the medical inspector, or the physician who examined the pupil pursuant to the provisions of this act.
> b. *Whenever any teaching staff member . . . shall have reason to believe that a pupil has used or may be using anabolic steroids*, that teaching staff member . . . shall report the matter as soon as possible to the school nurse or medical inspector, as the case may be, or to a student assistance coordinator, and to the principal or, in his absence, to his designee. The principal or his designee, shall immediately notify the parent or guardian and the superintendent of schools, if there be one, or the administrative principal and shall arrange for an examination of the pupil by a doctor selected by the parent or guardian or by the medical inspector. The pupil shall be examined as soon as possible for the purpose of diagnosing whether or not the pupil has been using anabolic steroids. A written report of that examination shall be furnished by the examining physician to the parent or guardian of the pupil and to the superintendent of schools or administrative principal.   . . .

(Emphasis added.)

8

> No action of any kind in any court of competent jurisdiction shall lie against any teaching staff member, including a student assistance coordinator, any school nurse or other educational personnel, medical inspector, examining physician or any other officer, agent or any employee of the board of education or personnel of the emergency room of a hospital because of any action taken by virtue of the provisions of this act, *provided the skill and care given is that ordinarily required and exercised* by other such teaching staff members, nurses, educational personnel, medical inspectors, physicians or other officers, agents, or any employees of the board of education or emergency room personnel.

N.J. Stat. Ann. § 18:40A-13 (emphasis added).[4]

The Court appreciates that the New Jersey Legislature enacted the reporting legislation in an effort to prevent and eliminate drug and alcohol abuse in its schools. See N.J. Stat. Ann. § 18:40A-13.  In this case, however, the Court cannot find as a matter of law, at this stage of the litigation, that Defendants are entitled to statutory immunity. More facts are needed to ensure that Defendants exercised the requisite skill and care in handling Plaintiff's situation, specifically because the report of his drug use came from another student, allegedly antagonistic to Plaintiff, rather than an educator or administrator.  Therefore, the motion for judgment on the pleadings will be denied.

## Conclusion

Accordingly, Defendants' motion for judgment on the pleadings [12] is denied. An appropriate Order will accompany this Opinion.

Dated: March 27, 2014

/s/ Joseph H. Rodriguez
JOSEPH H. RODRIGUEZ
U.S.D.J.

---

[4]Of course, "[a state] immunity statute, although effective against a state tort claim, has no force when applied to suits under the Civil Rights Act." Good v. Dauphin Co. Social Serv. for Children and Youth, 891 F.2d 1087, 1091 (3d Cir. 1989).